1
2
3
4
5
6
7          IN THE UNITED STATES DISTRICT COURT FOR THE

8                  EASTERN DISTRICT OF CALIFORNIA

9
**MIKHAEL ISSA KAMAR**,                    )       **1: 07-CV-0340 AWI TAG**
10                                          )
         **Plaintiff**,                     )       **ORDER GRANTING FEDERAL**
11                                          )       **DEFENDANTS' MOTION TO DISMISS**
     **v.**                                 )       **AND DISMISSING COMPLAINT**
12                                          )       **AGAINST FEDERAL DEFENDANTS**
**KEITH T. KROLCZYK, QUAN**                 )       **WITHOUT LEAVE TO AMEND**
13  **VUONG, JOHN UNDERWOOD,**              )
**SHELLEY ANSELMI, SCOTT**                  )       **ORDER GRANTING STATE**
14  **LAMBERT, JOHN DEPASQUALE,**           )       **DEFENDANTS' MOTION TO DISMISS**
**UNITED STATES OF AMERICA,**               )       **AND DISMISSING COMPLAINT**
15  **COUNTY OF KERN, and DOES**            )       **AGAINST STATE DEFENDANTS**
**1 through 20 inclusive,**                 )       **WITH LEAVE TO AMEND**
16                                          )
         **Defendants**.                    )       (Documents #43 #48)
17  _____ )

18

19                      **PROCEDURAL HISTORY**

20          On February 28, 2007, Plaintiff Kamar filed a complaint against agents employed by the

21  Federal Bureau of Alcohol, Tobacco and Firearms ("ATF") pursuant to <u>Bivens v. Six Unknown</u>

22  <u>Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), and against officers

23  employed by the State of California pursuant to 42 U.S.C. § 1983.   The complaint alleges

24  Defendants searched Plaintiff's business and seized his property in violation of the Fourth

25  Amendment.

26          On March 13, 2008, the court granted Federal Defendants Keith Krolczyk, Quan Vuong,

27  John Underwood, and John DePaqsquale ("Federal Defendants")'s motion to dismiss and

28  dismissed the complaint because it was not filed within the applicable statute of limitations.  The

court found that the alleged Fourth Amendment violations accrued when Defendants seized Plaintiff's property in 2001 and 2002, which was over four years prior to the filing date of this civil rights action.   The court found that Defendants' retention of Plaintiff's seized property up until a time that fell within the statute of limitations was not a separate constitutional violation nor did it constitute a continuing violation of Plaintiff's constitutional rights for statute of limitation purposes.   Because the complaint provided little information concerning the limitation period and possible tolling, the court dismissed the complaint with leave to amend to allege tolling.

On April 10, 2008, Plaintiff filed an amended complaint.

On April 24, 2008, Federal Defendants filed a motion to dismiss.   Federal Defendants contend the complaint is subject to dismissal because it was not filed within the statute of limitations and the complaint does not sufficiently allege equitable tolling.

On April 28, 2008, Defendants Shelley Anselmi and Scott A. Lambert ("State Defendants") filed a motion to dismiss.   State Defendants contend that the claim against them is barred by the statute of limitations and the amended complaint fails to allege facts justifying equitable tolling.

On May 23, 2008, Plaintiff filed oppositions to the two pending motions to dismiss. Relying on Harvey v. Walkdron, 210 F.3d 1008 (9th Cir. 2000), Plaintiff contends that his cause of action did not accrue until the criminal charges against him had been dismissed.   In addition, Plaintiff contends that equitable tolling is appropriate because it does not appear beyond all doubt that Plaintiff will be unable to prove a set of facts that would establish the timeliness of this action.   Plaintiff argues equitable tolling is appropriate because it would have been foolhardy for Plaintiff to file this civil action when Defendants were investigating him and determining whether to file criminal charges.   As to Federal Defendants only, Plaintiff contends that his filing of a claim with the ATF, demanding the return of his property put Defendants on notice of this civil rights action, Defendants were not prejudiced by the late filing of the civil rights action, and

1  Plaintiff acted in good faith by filing the ATF claim to lessen his damages.

2       On June 2, 2008, Federal Defendants filed a reply.  On June 2, 2008, State Defendants

3  filed a reply.

4  **ALLEGED FACTS**

5       The complaint alleges that on November 14, 2001, a search warrant was issued for

6  Plaintiff's business, Sell for Less.   The complaint alleges that Defendants executed the

7  search warrant and obtained evidence pursuant to the warrant.   The complaint alleges that

8  Defendant Underwood's Affidavit, was the sole basis for the search warrant for the search of

9  Plaintiff's business, "Sell for Less."   The complaint alleges that Defendant Underwood's

10  Affidavit was purely a recitation of information about alleged criminal activity by individuals

11  other than Plaintiff.   The complaint alleges that the affidavit alleged that various persons

12  purchased cigarettes from a tobacco warehouse in Virginia, which was being maintained by

13  undercover ATF agents, and shipped them to California.   The complaint alleges ATF

14  surveillance never observed what happened to the cigarettes after shipment to California or that

15  the cigarettes were ever delivered to, or distributed by, Sell for Less.

16       The complaint alleges that the investigation itself was for the distribution of cigarettes not

17  carrying California tax stamps.   The complaint alleges that Plaintiff is a licenced cigarette

18  distributor and distributors are the middlemen in California who put the actual stamps on the

19  packs prior to selling them.   The complaint alleges Plaintiff was legally allowed to poss un-

20  stamped packs.

21       The complaint alleges that the warrant, through an attachment, described Sell for Less at

22  844 Belle Terrace #5, a warehouse in Bakersfield, as the premises to be searched.   The

23  complaint alleges that the list of items that the warrant authorized to be seized was incorporated

24  into by another attachment.   The complaint alleges that the warrant was so broad that it allowed

25  for the indiscriminate seizure of every document and most of the inventory at Sell for Less,

26  including over $700,000 worth of cigarettes, $40,438.05 in cash and a forklift.

27

28  3

The complaint alleges that Plaintiff immediately filed the requisite administrative claim with the ATF demanding the return of his unlawfully seized property.    This claim was rejected.

The complaint alleges that Plaintiff continued to assert his Fourth Amendment rights had been violated by the illegal search and seizure by way of motions to suppress and demurrers to the government's complaint.   The complaint alleges that on August 25, 2004, the United States District Court ruled the warrant was issued without probable cause and was illegally overbroad. The complaint alleges that the government appealed this order, and finally dismissed its appeal on July 29, 2005.

The complaint alleges that relying upon unlawfully obtained documents and property during the illegal search on November 14, 2001 and other information from that search, on August 20, 2002, Plaintiff's business was searched for a second time by Defendants  Krolczyk, Vuong, Anselmi, Lambert, and DePasquale and others to be identified, along with Kern County Sheriff's officers, identified herein as Doe Defendants.    The complaint alleges that Defendant Krolczyk's affidavit was the sole basis for the search warrant.   The complaint alleges that the affidavit was based on information acquired by the 2001 search warrant, which was ruled illegal.   The complaint alleges that this warrant was so broad that it allowed for the indiscriminate seizure of every document and most of the inventory at Sell for Less.

The complaint alleges that the searches conducted on November 14, 2001 and August 16, 2002 caused three different arrests and prosecutions of Plaintiff:

   a.    A complaint was filed against Plaintiff in the Central District of California, based on illegally seized documents and information on April 8, 2003. This complaint was dismissed when a Federal Court determined that the November 2001 search warrant was so overbroad, that a reasonable officers could not have believed in good faith that the search was valid, quashing the search warrant and suppressing all evidence obtained from the search.

   b.    A felony complaint was filed against Plaintiff in Kern County in July 2003, based

4

on evidence illegally obtained through the above searches. This case was
ultimately dismissed on or about June 26, 2006.

c. A felony complaint was filed against Plaintiff in Merced County on April 7, 2003,
based on unlawfully seized items from the August 20, 2002, search. The Merced
case was finally resolved on November 2, 2006.

The complaint alleges that because the last unlawful search and seizure of Plaintiff's property took place on August 20, 2002, Plaintiff's claim was not time barred on January 1, 2003 when the applicable statute of limitations was extended to two years.

The complaint alleges that the two year statute of limitations was equitably tolled during the time that criminal charges were pending.    The complaint alleges that the limitations period was tolled from April 7, 2003 when the first felony complaint was filed until the resolution of the last criminal proceedings.    Allowing for tolling during this time, this February 28, 2007 action was timely.

The complaint further alleges that extraordinary circumstances beyond Plaintiff's control make it impossible for him to file this complaint within two years after the search and seizure. The complaint alleges Plaintiff was unable to obtain all vital information bearing on the existence of his claim, including a judicial determination that the search warrant lacked probable cause.

The complaint alleges that Plaintiff diligently pursued his claim.    The complaint alleges that following the first search and seizure on November 14, 2001, Plaintiff filed an administrative claim with the ATF demanding the return of his unlawfully seized property.    This claim was rejected.    Plaintiff continued to assert that his Fourth Amendment right were violated.   The complaint alleges that Defendants have not been prejudiced by any delay in filing this action because Defendants had timely notice of Plaintiff's claims.

The complaint alleges that Defendant Underwood intentionally failed to include in his affidavit the crucial fact that, as a licensed distributor, Plaintiff was legally authorized to possess un-stamped cigarette packs at his business.       The complaint alleges that had the Magistrate

1 known that Plaintiff Kamar was authorized to have un-stamped cigarette packs, the Magistrate

2 would not have found probable cause to search Plaintiff's business.

3       The complaint alleges that Acting under color of law, Agent Underwood, along

4 with unnamed Doe Defendants, intentionally omitted important facts, concocted false statements,

5 presented a patently defective warrant and affidavit to the federal magistrate, knowing that it

6 lacked probable cause.   The complaint alleges that Defendant Underwood also intentionally

7 omitted any mention of whether the shipments addressed to locations other than Sell for Less

8 were in fact delivered to those locations.   The complaint alleges that these omissions were

9 material to a finding of probable cause because if the cigarette shipments addressed to locations

10 other than Sell For Less were not delivered to the addresses provided on the fictitious invoices,

11 then the Magistrate would not have had any reason whatsoever to expect that shipments

12 addressed to Plaintiff would be delivered to him at Sell For Less.

13     The complaint alleges that Defendant Krolczyk incorporated the faulty affidavit in his

14 own affidavit for the August 20, 2002 search.   The complaint alleges that Agents Vuong,

15 Anselmi, Lambert and DePasquale also could have never in good faith reasonable believed they

16 were legally conducting the August 2002 searched based on a warrant so defective. Neither could

17 any of the Doe defendants of ATF or the Kern County Sheriff's Department.

18 **LEGAL STANDARD**

19     A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil

20 Procedure for "failure to state a claim upon which relief can be granted".   Fed.R.Civ.Pro.

21 12(b)(6)  A Rule 12(b)(6) dismissal can be based on the failure to allege a cognizable legal theory

22 or the failure to allege sufficient facts under a cognizable legal theory.  Balistreri v. Pacifica

23 Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990); Robertson v. Dean Witter Reynolds, Inc., 749

24 F.2d 530, 533-34 (9th Cir.1984).   In considering a motion to dismiss, the court must accept as

25 true the allegations of the complaint in question, construe the pleading in the light most favorable

26 to the party opposing the motion, and resolve all doubts in the pleader's favor.   Hospital Bldg.

27

28                          6

1  Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976); Jenkins v. McKeithen, 395 U.S. 411,

2  421 (1969); Broam v. Bogan, 320 F.3d 1023, 1028 (9th Cir. 2003).

3       For a complaint to avoid dismissal pursuant to Rule 12(b)(6), the complaint need not

4  contain detailed factual allegations; rather, it must plead "enough facts to state a claim to relief

5  that is plausible on its face."  Bell Atlantic Corp. v. Twombly, – U.S. – , 127 S.Ct. 1955, 1974

6  (2007); Weber v. Department of Veterans Affairs, 512 F.3d 1178, 1181 (9th Cir. 2008).   While a

7  complaint need not plead "detailed factual allegations," the factual allegations it does include

8  "must be enough to raise a right to relief above the speculative level."  Twombly, 127 S.Ct. at

9  1964-65.   Federal Rule of Civil Procedure 8(a)(2) requires a "showing" that the plaintiff is

10 entitled to relief, "rather than a blanket assertion" of entitlement to relief.  Id. at 1965 n. 3.

11 Thus, a Rule 12(b)(6) motion to dismiss should be granted when a plaintiff fails to nudge his or

12 her claims "across the line from conceivable to plausible."  Id. at 1974.

13                                    **DISCUSSION**

14       Plaintiff brings this civil rights action against Federal Defendants pursuant to Bivens v.

15 Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), and against

16 State Defendants pursuant to 42 U.S.C. § 1983.   In Bivens the Supreme Court established a

17 direct cause of action under the Constitution of the United States against federal officials for the

18 violation of federal constitutional rights despite the absence of any federal statute creating

19 liability.  Bivens, 403 U.S. at 389.

20       Defendants contend that this action is barred by the statute of limitations.     Because

21 neither Bivens nor 42 U.S.C. § 1983 contain a specific statute of limitation, federal courts apply

22 the forum state's statute of limitations for personal injury actions.  Pesnell v. Arsenault, 490 F.3d

23 1158, 1163-64 (9th Cir. 2007); Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004).  Although

24 California's statute of limitations for personal injury actions was extended from one year to two

25 years effective January 1, 2003, the two-year statute of limitations does not apply retroactively to

26 claims that accrued prior to January 1, 2003.  Cal. Civ. Proc. Code § 335.1 (West 2007); Jones,

27

28                                          7

1    393 F.3d at 927;  Maldonado v. Harris, 370 F.3d 945, 945-55 (9th  2004).   Thus, a one year

2    statute of limitations applies to this action.

3            Federal law determines when a claim accrues, and under federal law, a claim accrues

4    when the plaintiff knows or has reason to know of the injury which is the basis of the action.

5    Maldonado, 370 F.3d at 955 (Section 1983 claim);  W. Ctr. for Journalism v. Cederquist, 235

6    F.3d 1153, 1156 (9th Cir. 2000) (Bivens claim).   Here, the searches at issue took place on

7    November 14, 2001 and August 20, 2002.   The complaint contains no allegations showing that

8    Plaintiff did not know about the searches and seizures when they occurred, and the court finds

9    Plaintiff knew that his property had been seized on or soon after the date of the searches.

10   Plaintiff's claims concerning the November 14, 2001 search accrued on approximately

11   November 14, 2001, when the search took place.   Plaintiff's claims concerning the August 20,

12   2002 search accrued on approximately August 20, 2002, when the search took place.   The court

13   previously found that Defendants' retention of Plaintiff's seized property did not constitute an

14   additional unconstitutional act that would give rise to a separate constitutional violation.   The

15   court further found that because Plaintiff is basing this action on damages arising from the

16   alleged unconstitutional searches and seizures, the "continuing violation" standard does not

17   apply.   Thus, this action was filed over four years after the last search accrued, and this action is

18   barred by the statute of limitations.

19   **A.  Heck v. Humphrey and the Accrual Date**

20           Plaintiff contends that his cause of action did not accrue until the last of the criminal

21   charges against him were resolved.   Plaintiff cites to Harvey v. Waldron, 210 F.3d 1008 (9th Cir.

22   2000), in support of this proposition.   Relying on Wallace v. Kato, – U.S. –, 127 S.Ct. 1091

23   (2007), Defendants contend that Harvey is no longer good law and the statute of limitations

24   accrued at the time of the searches.   Both Harvey and Wallace apply the rule announced in Heck

25   v. Humphrey, 512 U.S. 477 (1994), and the impact of  Heck on the accrual date.

26           In Heck v. Humphrey, 512 U.S. 477 (1994), the Supreme Court reviewed whether a

27

28                                          8

1   prisoner could bring a Section 1983 action to challenge his conviction.  The Supreme Court

2   recognized that Section 1983 actions, like civil tort actions, are not appropriate vehicles to

3   challenge the validity of outstanding criminal judgments if such a challenge necessarily requires

4   the plaintiff to prove the unlawfulness of his conviction.  Id. at 486.  The Supreme Court

5   concluded that:

> [I]n order to recover damages for allegedly unconstitutional conviction or
> imprisonment, or for other harm caused by actions whose unlawfulness would
> render a conviction or sentence invalid, a § 1983 plaintiff must prove that the
> conviction or sentence has been reversed on direct appeal, expunged by executive
> order, declared invalid by a state tribunal authorized to make such
> determination, or called into question by a federal court's issuance of a writ of
> habeas corpus, 28 U.S.C. § 2254.

10   Id. at 486-87 (footnote omitted).  Until such time as the plaintiff's conviction is invalidated, a

11   cause of action under Section 1983 for damages is not cognizable.  See id.  Concerning the statute

12   of limitations for Section 1983 cases, the Supreme Court found that "the statute of limitations

13   poses no difficulty while the state challenges are being pursued, since the § 1983 claim has not

14   yet arisen. Just as a cause of action for malicious prosecution does not accrue until the criminal

15   proceedings have terminated in the plaintiff's favor . . ., so also a § 1983 cause of action for

16   damages attributable to an unconstitutional conviction or sentence does not accrue until the

17   conviction or sentence has been invalidated."  Id. 512 U.S. at 489-90.

18          In 2000, the Ninth Circuit considered the application of Heck to constitutional claims that

19   could affect pending and potential criminal charges in the case of Harvey v. Waldron, 210 F.3d

20   1008 (9th Cir. 2000).   In Harvey, the Ninth Circuit held that "Heck applies to pending criminal

21   charges, and that a claim, that if successful would necessarily imply the invalidity of a conviction

22   in a pending criminal prosecution, does not accrue so long as the potential for a conviction in the

23   pending criminal prosecution continues to exist."  Harvey, 210 F.3d at 1014.   For example, a

24   Fourth Amendment claim concerning "evidence upon which criminal charges are based does not

25   accrue until the criminal charges have been dismissed or the conviction has been overturned."

26   Harvey, 210 F.3d at 1015.   Based on Harvey, Plaintiff contends that his statute of limitations

27

28                                               9

1    did not accrue until all charges against him had been dismissed.

2         The court finds that the recent Supreme Court case of Wallace v. Kato, 127 S.Ct. 1091

3    (2007), has effectively overruled Harvey.   In Wallace, the plaintiff contended that any civil

4    rights action that would impugn his anticipated future conviction could not be brought until that

5    conviction occurs and is set aside.   Wallace, 127 S.Ct. at 1098.   The Supreme Court refused to

6    embrace what the Supreme Court entitled a "bizarre extension of Heck."   Id.   In Wallace, the

7    Supreme Court overruled those circuits that had applied the Heck to bar Section 1983 claims

8    when criminal charges were *only pending*.   The "Heck rule for deferred accrual is called into

9    play only when there exists 'a conviction or sentence that has not been . . . invalidated,' that is to

10   say, an 'outstanding criminal judgment.'"   Id. at 1097-98 (quoting Heck, 512 U.S. at 486-87).   To

11   avoid a concurrent Section 1983 action and criminal action, the Supreme Court held that if a

12   plaintiff files a false arrest claim or any other claim related to rulings that will likely be made in a

13   pending or anticipated criminal trial, "it is within the power of the district court, and in accord

14   with common practice, to stay the civil action until the criminal case or the likelihood of a

15   criminal case is ended"   Wallace, 127 S.Ct. at 1098.

16        The Supreme Court directly addressed the collision that would occur in some civil rights

17   cases between the statute of limitations, the Heck bar, and a potential Heck bar.   The Supreme

18   Court recognized that some civil rights actions accrue "before the setting aside of-indeed, even

19   before the existence of-the related criminal conviction."   Wallace, 127 S.Ct. at 1098.   This fact

20   pattern "raises the question whether, assuming that the Heck bar takes effect when the later

21   conviction is obtained, the statute of limitations on the once valid cause of action is tolled as long

22   as the Heck bar subsists."   Id.   The Supreme Court declined to adopt such a federal tolling rule.

23

24        _____Under such a regime, it would not be known whether tolling is appropriate by
     reason of the Heck bar until it is established that the newly entered conviction
25   would be impugned by the not-yet-filed, and thus utterly indeterminate, § 1983
     claim.  It would hardly be desirable to place the question of tolling vel non in this
26   jurisprudential limbo, leaving it to be determined by those later events, and then
     pronouncing it retroactively. Defendants need to be on notice to preserve beyond
27   the normal limitations period evidence that will be needed for their defense; and a

28                                          10

statute that becomes retroactively extended, by the action of the plaintiff in crafting a conviction-impugning cause of action, is hardly a statute of repose.

Id. at 1099.

In light of Wallace, the Heck bar did not prohibit Plaintiff from filing this action until the criminal charges against him were dismissed.   The rules announced in Wallace apply retroactively to Plaintiff because the Supreme Court applied these rules to the parties in Wallace. See, e.g., Reynoldsville Casket Co. v. Hyde, 514 U.S. 749, 752 (1995) (when the Supreme Court announces a new legal rule and applies it to the parties in that case, we must apply the new rule to all pending cases, even if those pending cases "involve predecision events").   Because the Heck bar did not apply to the filing of this action, this action accrued at the time of the search and Plaintiff is not entitled to a later accrual date.

Plaintiff contends that Wallace does not apply to this action and Harvey is still good law because Wallace and Heck concerned false arrest and malicious prosecution claims.  Plaintiff argues that Harvey still applies to this civil rights claims based on Fourth Amendment violations.  The court disagrees.   Nothing in Wallace appears to limit it to certain types of civil rights violations.   If the Heck bar did apply to Fourth Amendment claims while charges were pending, the Supreme Court would hardly have stated that applying the Heck bar to pending charges was a "bizarre extension of Heck."   In addition, when fashioning a remedy to avoid concurrent civil rights and criminal trials the Supreme Court stated specifically, that "[i]f a plaintiff files a false arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended."   Wallace, 127 S.Ct. at 1098.   If Wallace meant that Harvey would apply to other claims, such as Fourth Amendment claims, the Supreme Court would not have suggested staying any civil action that is ***related to*** a ruling that will likely be made in a pending criminal trial.   Thus, the court finds that neither the Heck bar nor the later accrual date set forth in Harvey apply to determine the accrual date and statute of limitations in

11

1  this action.

2  **B. Equitable Tolling**

3        Because the court found that the prior complaint provided little information concerning

4  the limitation period and tolling, the court dismissed the prior complaint with leave to amend to

5  allege tolling.  See United States ex rel. Saaf v. Lehman Brothers, 123 F.3d 1307, 1308 (9th  Cir.

6  1997) (finding district court erred by failing to allow plaintiff opportunity to amend complaint to

7  allege equitable tolling).   Defendants contend that the complaint's allegations are insufficient to

8  allege equitable tolling.   Plaintiff argues equitable tolling is available.

9  *1.  Standard of Review*

10       Plaintiff contends that the court may only grant this motion to dismiss and find the

11  complaint filed outside the statue of limitations if the assertions of the complaint, read with the

12  required liberality, would not permit the plaintiff to prove that the statute was tolled.   Citing to

13  Supermail Cargo, Inc. v. United States, 68 F.3d 1204, 1206 (9th Cir. 1995),  Plaintiff argues that

14  the court cannot dismiss the complaint unless it appears beyond doubt that the plaintiff can prove

15  no set of facts that would established the timeliness of a claim.   Plaintiff asserts that he may be

16  able to establish facts outside the pleadings that could constitute extraordinary circumstances.

17       Plaintiff clearly believes that pursuant to the prior law federal courts had applied on

18  motions to dismiss, this court may dismiss only if it is clear that no relief could be granted under

19  any set of facts that could be proved consistent with the allegations.  Swierkiewicz v. Sorema N.

20  A., 534 U.S. 506, 512 (2002).   Swierkiewicz's holding that "any set of facts that could be

21  proved consistent" with the complaint's allegations could save a complaint from dismissal has

22  been overruled.   In Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007) the Supreme Court

23  overruled Swierkiewicz's older standard.

24        The "no set of facts" language has been questioned, criticized, and explained away
      long enough by courts and commentators, and is best forgotten as an incomplete,

25        negative gloss on an accepted pleading standard: once a claim has been stated
      adequately, it may be supported by showing any set of facts consistent with the

26        allegations in the complaint. Conley described the breadth of opportunity to prove
      what an adequate complaint claims, not the minimum standard of adequate

27

28<br>               12

1  pleading to govern a complaint's survival.

2  Id. 1959-60.

3      Under this new standard, the complaint must allege facts for equitable tolling that are

4  plausible on its face.  See Twombly, 127 S.Ct. at 1974.   The complaint must provide enough

5  allegations on equitable tolling to raise the right to relief above the speculative level.  See id. at

6  1964-65.  With these standards in mind, the court turns to the tolling provisions discussed by the

7  parties.

8  *2.  Tolling Under California Law*

9      For actions under 42 U.S.C. § 1983, the court is apply the forum state's law regarding

10  tolling, including equitable tolling, except to the extent any of these laws is inconsistent with

11  federal law. Canatella v. Van De Kamp, 486 F.3d 1128, 1132 (9th Cir. 2007).  Tolling provisions

12  for Bivens actions are also borrowed from the forum state.  Papa v. United States, 281 F.3d 1004,

13  1009 (9th Cir. 2002).

14      "Equitable tolling under California law 'operates independently of the literal wording of

15  the Code of Civil Procedure' to suspend or extend a statute of limitations as necessary to ensure

16  fundamental practicality and fairness.'"  Jones v. Blanas, 393 F.3d 918, 928 (9th Cir. 2004)

17  (quoting Lantzy v. Centex Homes, 31 Cal.4th 363 (2003)).   The purpose of California's equitable

18  tolling doctrine "is to soften the harsh impact of technical rules which might otherwise prevent a

19  good faith litigant from having a day in court."   Daviton v. Columbia/HCA Healthcare Corp.,

20  241 F.3d 1131, 1137 (9th Cir. 2001).  Equitable tolling under California law is appropriate if there

21  is: "(1) timely notice to the defendant in filing the first claim; (2) lack of prejudice to defendant

22  in gathering evidence to defend against the second claim; and, (3) good faith and reasonable

23  conduct by the plaintiff in filing the second claim." Azer v. Connell, 306 F.3d 930, 936 (9th Cir.

24  2002);  Daviton v. Columbia/HCA Healthcare Corp.,  241 F.3d 1131, 1137-38 (9th Cir. 2001);

25  Collier v. City of Pasadena, 142 Cal.App.3d 917, 924 (1983).

26      The first requirement of timely notice "requires that [the] plaintiff have filed the first

27

28                              13

claim within the statutory period" and that claim must "alert the defendant in the second claim of

the need to begin investigating the facts which form the basis for the second claim." Daviton,

241 F.3d at 1138; Collier, 142 Cal.App.3d at 924.   In addition, both claims should name the

same defendant.  Daviton, 241 F.3d at 1138; Collier, 142 Cal.App.3d at 924.   "[W]here the first

proceeding does not seek relief against the defendant in the second proceeding, equitable tolling

does not apply."  Apple Valley Unified School Dist. v. Vavrinek, Trine, Day & Co., 98

Cal.App.4th 934, 954 (2002).   For example, a workers' compensation claim equitably tolls a

personal injury action against that same employer for injuries sustained in the same incident, but

it would not ordinarily "toll a personal injury action against a third party who might also be liable

for the injury."  Collier, 142 Cal.App.3d at 924-25.

    In Garabedian v. Skochko, 232 Cal.App.3d 836  (1991), the plaintiff was injured on

property owned by the United States Department of Housing and Urban Development (HUD).

Within the one-year limitation period, the plaintiff filed a tort claim with HUD, but HUD

informed the plaintiff that the property was managed by Skochko, an independent contractor.  Id.

at 840.   When the plaintiff later sued Skochko, the limitation period had passed.   The California

Court of Appeal held that equitable tolling during the pendency of the claim against HUD was

not available.   The California Court of Appeal found "although filing the claim with HUD put

the agency on notice of appellant's intended suit against the government, it did not put respondent

on notice of appellant's intended suit against him."  Id. at 848.   The Court of Appeal held "that

the doctrine of equitable tolling does not apply merely because defendant B has obtained timely

knowledge of a claim against defendant A for which defendant B knows or believes he may share

liability."  Id. at 847.

    Plaintiff asserts that the statute of limitations on his claim against Federal Defendants is

tolled by his pursuit of his administrative remedies against the ATF.   These two claims are not

being pursued against the same defendant.   The administrative proceeding was against the ATF,

not Federal Defendants.   There is no allegation in the complaint that Federal Defendants even

knew about Plaintiff's ATF claim.   Plaintiff could have pursued his administrative claim against

the AFT while also filing a civil rights action in this court against Federal Defendants.   Even

assuming Federal Defendants knew about the ATF administrative claim, they could reasonably

have concluded that Plaintiff was not going to pursue a civil rights action against them.   As

noted above, the California courts have held by way of example that a workers' compensation

claim generally "would not equitably toll a personal injury action against a third party who might

also be liable for the injury." Collier, 142 Cal.App.3d at 924-25.   Similarly, Plaintiff's pursuit of

his administrative claim against the ATF does not equitably toll his civil rights claim against

Federal Defendants simply because they are third parties who might also be responsible for

damages stemming from the seizure of Plaintiff's property.

        The court recognizes that a few California decisions have applied equitable tolling against

defendants who were not parties to the prior actions.   However, those decisions have involved

special factual situations in which the defendants clearly had **notice** that the plaintiff intended to

litigate claims against ***them*** before the statutes expired.   Apple Valley Unified School Dist., 98

Cal.App.4th at 955.   In addition, these cases have involved an issue where the party in the

second lawsuit's liability depends on the liability and financial resources of the first defendant.

See, e.g., Structural Steel Fabricators, Inc. v. City of Orange, 40 Cal.App.4th 459, 465-67 (1995).

For example, in Structural Steel Fabricators, Inc. v. City of Orange, 40 Cal.App.4th 459 (1995), a

subcontractor sued a general contractor and its surety seeking payment for construction work.

Prior to suing the contractor and surety, the subcontractor served a stop notice on the city and

demanded that the city withhold payment from the surety to cover the subcontractor's claim. Id

at 462.   In addition, after it sued the general contractor and the surety, the subcontractor

informed the city that it may be liable if the bond surety was insolvent. Id. at 462 & 466.   Later,

the subcontractor sued the city, but this action was filed outside the statute of limitations.

Although the city was not a defendant in the first suit, the California Court of Appeals held that

the statute of limitations on the second suit was tolled while the first suit was pending because

the city was clearly on notice of the claim against it within the limitations period.   Id. at 466.

In Stalberg v. Western Title Ins. Co., 27 Cal.App.4th 925 (1994), a title insurer had recorded deeds for upstream property owners, which included a fictitious easement across the plaintiffs' properties.  When the plaintiffs discovered the easement, they filed a quiet title suit against the upstream owners.  During this suit the plaintiffs gave timely notice to the defendant title insurer, and the defendant participated in the quiet title action against the upstream property owners both by partially financing it and by receiving frequent updates on its progress from the plaintiffs' attorney.  Id. at 929.   After the statute of limitations expired, the plaintiffs filed a separate slander of title suit against the insurer.   The California Court of Appeal found equitable tolling was available in the second lawsuit.   The court noted that the plaintiffs did not learn the defendant was responsible for the fictitious recording until during the quite title action.  Id.   In addition, when the plaintiffs learned that the defendant was responsible for the recording during the first action, they informed the insurer of its culpability and promptly filed suit against the defendant.  Id.   The court reasoned equitable tolling was appropriate because the plaintiffs had selected the legal remedy designed to lessen the extent of their injuries, gave timely notice to the defendant, and acted reasonably and in good faith in pursuing the quiet title action first.  Id. at 932-33.

There are no special circumstances in this case justifying the application of the equitable tolling doctrine to toll the statute of limitations on Plaintiff's civil rights claims against Federal Defendants.   Plaintiff knew of Federal Defendants' involvement in the search at the time of, or about the time of, the search.  Plaintiff proceeded with his administrative claim against the ATF and provided Federal Defendants no notice of a potential civil rights suit against them.   In both the complaint and opposition Plaintiff admits he took no action against Federal Defendants for a tactical reason – Plaintiff did not wish to file a civil rights claim against the same people involved in criminally investigating and prosecuting him.   Based on Plaintiff's own admissions, the court cannot find that Defendants were on notice about the civil rights action against them

1  merely because Plaintiff had filed a claim for the return of his property with the ATF.   Thus,

2  equitable tolling under California law is not available.

3  ***3.   Federal Equitable Tolling***

4       Plaintiff contends that the interests of justice require the application of the doctrine of

5  equitable tolling because it would be unreasonable, fundamentally unfair, and simply impractical

6  to permit the limitations period to run while Plaintiff was defending his rights against the same

7  people investigating him in a criminal proceeding.   Equitable tolling can "be used to stop a

8  limitations period from continuing to run after it has already begun to run."  Socop-Gonzalez v.

9  Immigration and Naturalization Serv., 272 F.3d 1176, 1184 (2001) (internal quotations and

10 citation omitted).   It appears that if a state's tolling rules are insufficient, Section 1983 and

11 Bivens may permit the federal court to devise and impose such principles.  Wallace, 127 S.Ct. at

12 1103 (Justice Breyer, dissenting) ("If a given state court lacks the necessary tolling provision,

13 however, § 1983 , in my view, permits the federal courts to devise and impose such principles");

14 Heck v. Humphrey, 997 F.2d 355, 358 (7th Cir. 1993) (articulating why federal tolling regime

15 may apply to Section 1983 claims).   Under Federal law, equitable tolling may be applied when

16 extraordinary circumstances beyond the plaintiff's control made it impossible to file a claim on

17 time.  Stoll v. Runyon, 165 F.3d 1238, 1242 (9th Cir. 1999).

18       Plaintiff contends equitable tolling should be made available because during the time

19 Plaintiff could have filed a federal civil rights action, Plaintiff knew he was being investigated

20 and subject to prosecution.   Plaintiff argues in the opposition that it "would have been foolhardy

21 for [Plaintiff] to force the government's hand by filing a civil claim against the same government

22 officials who were investigating him and who would ultimately determine whether criminal

23 charges would be filed against him."   Plaintiff states requiring him to file a civil rights claim

24 during this time would be "wholly unreasonable, fundamentally unfair, and simply impractical."

25       The court is not entirely unsympathetic to Plaintiff's argument.   And, Justice Breyer

26 agreed with Plaintiff in his dissent to Wallace when Justice Bryer opined that equitable tolling

27

28                                          17

should be available to toll the statute of limitations for a federal civil rights claim while criminal

charges are pending.  Wallace, 127 S.Ct. at 1103 (Justice Breyer, dissenting).   However, the

majority in Wallace strongly disagreed with the allowance of equitable tolling in such a situation.

First, the majority stated that there was no support "for the far-reaching proposition that equitable

tolling is appropriate to avoid the risk of concurrent litigation."  Wallace, 127 S.Ct. at 1099

-1100.  The majority reasoned that the only rationale for such a rule is the concern that a litigant

would have had to divide his attention between criminal and civil cases and the law has never

been that "a criminal defendant, or a potential criminal defendant, is absolved from all other

responsibilities that the law would otherwise place upon him".  Id. at 1100.   The majority stated

that: "[e]quitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all

for an entirely common state of affairs."   While acknowledging that its rule of no tolling may

develop a system of stays and dismissals, the majority believed that even with tolling "some (if

not most) plaintiffs will nevertheless file suit before or during state criminal proceedings."  Id.

Finally, the majority reasoned that states and municipalities have a strong interest in timely notice

of alleged misconduct by their agents.  Id.   In light of the majority in Wallace's strong

opposition to the very tolling Plaintiff suggests, the court cannot grant Plaintiff equitable tolling

based on his desire to not antagonize the people investigating him by filing a federal civil rights

action.

**C.   Tolling Pursuant to California Government Code § 945.3**

As discussed above, state law governs the application of tolling doctrines in a civil rights

action.   Hardin v. Straub, 490 U.S. 536, 543-44 (1989);  Torres v. City of Santa Ana,108 F.3d

224, 226 (9th Cir. 1997).  In California, the statute of limitations for civil rights actions is tolled

by California Government Code § 945.3 while criminal charges are pending. Torres,108 F.3d at

226;  Trimble v. City of Santa Rosa, 49 F.3d 583, 585 (9th Cir. 1995).  California Government

Code §  945.3 provides:

No person charged by indictment, information, complaint, or other accusatory
pleading charging a criminal offense may bring a civil action for money or damages against a

peace officer or the public entity employing a peace officer based upon conduct of the peace officer relating to the offense for which the accused is charged, including an act or omission in investigating or reporting the offense or arresting or detaining the accused, while the charges against the accused are pending before a justice, municipal, or superior court.

> Any applicable statute of limitations for filing and prosecuting these actions shall be tolled during the period that the charges are pending before a justice, municipal, or superior court.

Cal.Gov't Code § 945.3.   While the first portion of Section 945.3, which prohibits a criminal defendant from bringing a civil rights action in federal court while state criminal charges are pending, does not apply in federal civil rights actions, the second portion allowing for tolling does apply.   Torres, 108 F.3d at 227;  Harding v. Galceran, 889 F.2d 906, 909 (9th Cir. 1989).

Section 945.3 tolls the statute of limitations for defendants in criminal actions from filing civil suits against "peace officers" while the criminal case is pending in a "justice, municipal, or superior court" until the criminal charges are resolved.

Assuming Section 945.3 applies to Defendants, the first search was conducted on November 14, 2001.   According to the amended complaint's allegations, no criminal case was filed or pending within one year of November 14, 2001.   Thus, tolling pursuant to Section 945.3 does not save the claims arising from the November 14, 2001 search from violating the statute of limitations because the statute of limitations had already run before any criminal complaint was filed.

The second search was conducted on August 20, 2002.   The amended complaint alleges that a felony complaint was filed in the Merced County Superior Court on April 7, 2003, and this case was not resolved until November 2, 2006.   Any civil rights claims arising from the August 20, 2002 search accrued on or about August 20, 2002.   Applying the one year statute of limitations and Section 945.3 tolling, the statute of limitations ran from approximately August 20, 2002 until April 7, 2003, when the Merced County felony complaint was filed, or for a little over seven months.   The statute of was then tolled during the period that the charges were pending in the Merced County Superior Court from April 7, 2003 to November 2, 2006, when the amended complaint alleges the case was resolved.   The statute of limitations then began

running again and ran for almost four months until this action was filed on February 28, 2008.

Applying Section 945.3 tolling, the statute of limitations on the civil rights claims arising from

the August 20, 2002 search ran for only approximately eleven months.   Thus, the civil rights

claims against Defendants stemming from the August 20, 2002 search are not barred by the

statute of limitations ***if*** Section 945.3 tolling applies.

### *1.   State Defendants*

State Defendants contend that Section 945.3 tolling is not available because they are not

"peace officers" within the meaning of Section 945.3.   The complaint alleges that Shelley

Anselmi was a law enforcement officer employed by the State of California.   The complaint

alleges that Scott Lambert was a law enforcement officer employed by the State of California.

Taking these allegations as true, as the court must on this motion, it is unclear if State Defendants

were "peace officers" within the meaning of Section 945.3.

State Defendants provide the court with a transcript over which Defendants ask the court

take judicial notice.   In these transcripts, both State Defendants testify that they are employed by

the State Board of Equalization, Investigations Division.   California Penal Code § 830.11(a) lists

persons who are not peace officers but may still exercise the powers of arrest and serve warrants

within the scope of their employment.   Subjection (a)(6)(a) lists "[p]ersons employed by the

State Board of Equalization, Investigations Division, who are designated by the board's executive

director, provided that the primary duty of these persons shall be the enforcement of laws

administered by the State Board of Equalization".    State Defendants contend that they are such

State Board of Equalization Employees.

The only evidence that this court may consider on this motion to dismiss is the evidence

in the complaint, which is unclear about State Defendants' status as peace officers, and the

transcript in which State Defendants give their title.   Facts subject to judicial notice may be

considered by a court on a motion to dismiss.   In re Russell, 76 F.3d 242, 244 (9th Cir. 1996).

The court may take judicial notice of facts that are capable of accurate and ready determination

by resort to sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b); United States v. Bernal-Obeso, 989 F.2d 331, 333 (9th Cir. 1993).   Judicial notice may be taken of court records; Mullis v. United States Bank. Ct., 828 F.2d 1385, 1388 n.9 (9th Cir. 1987); Egan v. Teets, 251 F.2d 571, 578 (9th Cir. 1957).   Thus, the court may take judicial notice of the transcripts provided by State Defendants.  The problem is "a court may not take judicial notice of proceedings or records in another cause so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause then before it." M/V Am. Queen v. San Diego Marine Constr. Corp., 708 F.2d 1483, 1491 (9th Cir.1983).   Finding State Defendants work for the State Board of Equalization, Investigations Division, requires the court to take the content of the transcripts as true.  Because it would be necessary for the court to take judicial notice of the state court records and transcripts for the ***truth of the facts asserted***, the court cannot consider this evidence.

        The court is then left with a complaint that is vague about whether State Defendants are peace officers.  Because tolling pursuant to Section 945.3 may save the civil rights claims arising out of the second search if Section 945.3 applies to State Defendants, Plaintiff will be given leave to amend.  See  Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir.2001) ("leave to amend should be granted unless the district court determines that the pleading could not possibly be cured by the allegation of other facts").   However,  Plaintiff is advised that any amended complaint that includes an assertion that tolling is available pursuant to Section 945.3 must be based upon a well-founded belief that a cognizable or arguable legal theory exists that would support such a theory.  See Fed. R. Civ. P. 11.

### *2.  Federal Defendants*

        There is clearly no tolling available for the civil rights claims against Federal Defendants because Section 945.3 tolling does not apply to Federal Defendants.  Pursuant to California Penal Code § 830.8, federal criminal investigators and federal law enforcement officers are not California peace officers, but they may still exercise the powers of arrest of a peace officer in

certain circumstances.  Cal.Penal Code § 830.8.  Because federal officers are not "peace officers" under California law, Section 945.3's tolling provision does not apply to federal officials. Matthews v. Macanas, 990 F.2d 467, 469 (9th Cir. 1993), *abrogated on other grounds as stated in* Pascual v. Matsumura, 165 F.Supp.2d 1149, 1151 (D.Haw. 2001).   Plaintiff's claims against the Federal Defendants are not tolled pursuant to Section 945.3.  Thus, the entire action against Federal Defendants is barred by the one year statute of limitations, and Federal Defendants must be dismissed from this action.   While the court recognizes that generally leave to amend should be granted, the claims against Federal Defendants are barred by the statute of limitations and no amendment on tolling would save this action as against Federal Defendants.  See  Chang v. Chen, 80 F.3d 1293, 1296 (9th Cir. 1996).

## ORDER

Accordingly, based on the above memorandum opinion and order, the court ORDERS that:

1.   Federal Defendants' motion to dismiss is GRANTED.

2    Federal Defendants are DISMISSED from this action without leave to amend.

3.   State Defendants' motion to dismiss is GRANTED.

4.   State Defendants are DISMISSED from this action and Plaintiff is given leave to amend the complaint to allege that State Defendants are "peace officers" within the meaning of Section 945.3.

5.   Plaintiff shall file any amended complaint within thirty days of this order's date of service.

6.   Plaintiff is forewarned that failure to file an amended complaint that complies with this order will result in sanctions, including the action's dismissal.

IT IS SO ORDERED.

**Dated:   July 16, 2008**                         /s/ Anthony W. Ishii
                                                           CHIEF UNITED STATES DISTRICT JUDGE